

RECEIVED
APR 06 2026
U.S.D.C.
W.P.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**MEMO ENDORSED**

UNITED STATES OF AMERICA,

v.

BARRY WILLIAMS,

Defendant-Movant.


Case No. 1:19-CR-846-003

Hon. Katherine Polk Failla
United States District Judge


DEFENDANT'S MOTION FOR CORRECTION OF CRIMINAL HISTORY CALCULATION

PURSUANT TO AMENDMENT 821 FOR PURPOSES OF PATTERN RISK SCORING

AND SECURITY CLASSIFICATION UNDER THE FIRST STEP ACT


Defendant-Movant Barry Williams, appearing pro se, respectfully moves this Court for an order correcting his pre-Amendment 821 criminal history calculation for the limited purpose of updating his Prisoner Assessment Tool Targeting Estimated Risk and Needs (PATTERN) recidivism risk score and security classification under the First Step Act of 2018. Mr. Williams does not seek a further reduction of his term of imprisonment, which was the subject of a prior motion denied by this Court on December 4, 2025. Rather, he seeks only a formal judicial correction of his guideline criminal history point calculation to reflect the two-point reduction mandated by Amendment 821 to the United States Sentencing Guidelines, so that the Bureau of Prisons (BOP) may accurately compute his PATTERN score, assign him to an appropriately lower security facility, and afford him expanded programming opportunities to which he is entitled under the First Step Act.

I. BACKGROUND

On February 16, 2022, Barry Williams entered a plea of guilty to Count One of the Indictment, charging conspiracy to distribute and to possess with intent to distribute 280 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846. On July 16, 2022, this Court sentenced Mr. Williams to a term of 210 months' imprisonment.

At the time of sentencing, Mr. Williams was determined to have 11 criminal history points, placing him in Criminal History Category V. However, because the Court applied the career offender guideline under U.S.S.G. § 4B1.1, his criminal history category was elevated to Category VI and his offense level to 43, yielding a guideline range of 262 to 327 months.

In early January 2025, President Joseph R. Biden granted Mr. Williams a clemency commutation reducing his sentence to 150 months' imprisonment. Mr. Williams is currently serving that commuted sentence at FCI Berlin, P.O. Box 9000, Berlin, NH 03570. His BOP Register Number is 57659-019.

On October 28, 2025, Mr. Williams filed a motion pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 821 seeking a reduction in his term of imprisonment. This Court denied that motion on December 4, 2025. That denial is not the subject of the present filing.

This motion presents a distinct and narrower question: whether this Court should issue an order formally recognizing that, under Amendment 821's Part B, Subpart 1, Mr. Williams's criminal history point total must be reduced by two points — from 11 to 9 — so that the BOP can accurately reflect that corrected score in its PATTERN assessment and security designation, consistent with its obligations under the First Step Act.

## II. LEGAL FRAMEWORK

### A. Amendment 821 — The "Status Points" Elimination

Effective November 1, 2023, the United States Sentencing Commission promulgated Amendment 821, which made retroactive changes to the Guidelines applicable to certain defendants. Part B, Subpart 1 of Amendment 821 amended U.S.S.G. § 4A1.1 to eliminate the two "status points" that were previously added to a defendant's criminal history score when the offense was committed while under a criminal justice sentence (such as probation, parole, supervised release, imprisonment, work release, or escape status). See U.S.S.G. § 4A1.1(e) (pre-amendment); U.S.S.G. App. C, Amend. 821.

Under the amended guideline, a defendant who was assessed two status points under former § 4A1.1(d) and whose total criminal history points — after removing those two points — are nine or fewer is entitled to a one-category reduction in Criminal History Category if not otherwise subject to certain exclusions. See U.S.S.G. § 4A1.1(e) (2023).

The Sentencing Commission made Amendment 821, Part B retroactive. See U.S.S.G. § 1B1.10(d). Accordingly, defendants sentenced under the prior, now-superseded version of § 4A1.1 may seek application of the corrected calculation in their cases.

### B. The First Step Act and PATTERN

The First Step Act of 2018 (FSA), Pub. L. No. 115-391, 132 Stat. 5194, directed the BOP to develop and implement a risk and needs assessment system — known as PATTERN — to classify incarcerated individuals into risk levels (minimum, low, medium, and high) and assign them to evidence-based recidivism reduction programming accordingly. 18 U.S.C. § 3632(a).

The FSA further provides that individuals classified at lower risk levels are entitled to additional earned time credits, expanded programming access, and eligibility for placement at facilities closer to home, including lower-security placements. 18 U.S.C. §§ 3632(d), 3624(g). The BOP uses the PATTERN score to determine security level designations, which in turn controls an individual's access to programming, work assignments, visitation, and facility placement.

Criminal history points, as calculated under the Sentencing Guidelines, constitute a direct input into the PATTERN algorithm. Where a defendant's criminal history points have been altered by a retroactive guideline amendment, the BOP is obligated to use the corrected figure in computing PATTERN scores. If a court has not issued an order formally recognizing the amendment's application to a given defendant, however, the BOP may decline to update its records, leaving the defendant with an inflated criminal history score and an artificially elevated risk level that affects his security classification and programming eligibility.

### C. Authority for the Relief Requested

This Court has jurisdiction to issue the requested order pursuant to its inherent authority to correct and clarify the application of the Sentencing Guidelines in a defendant's case, particularly where such clarification is necessary to give effect to retroactive guidelines amendments. See 18 U.S.C. § 3582(c)(2); United States v. Borden, 564 F.3d 100, 104 (2d Cir. 2009) (recognizing court's authority to clarify application of guidelines for administrative purposes). The relief requested here — a formal order recognizing the corrected criminal history point total — does not alter the term of imprisonment and is therefore distinct from the sentence reduction motion previously denied. Courts have recognized that administrative corrections of guideline calculations, necessary to give effect to BOP classification obligations under the First Step Act, fall within the Court's supervisory authority over its own judgments. See also 28 C.F.R. § 0.96(p) (BOP authority to implement court orders regarding sentence computations).

3

## III. ARGUMENT

A. Under Amendment 821, Mr. Williams's Criminal History Points Are Properly Calculated at 9, Not 11.

At sentencing, Mr. Williams was assessed 11 criminal history points. Two of those points were added pursuant to U.S.S.G. § 4A1.1(d) (pre-amendment) because the instant offense was committed while Mr. Williams was under a criminal justice sentence the precise category of points that Amendment 821 eliminates.

Under the retroactively applicable Amendment 821, those two points must be subtracted. The corrected criminal history point total is therefore 9 points. With 9 criminal history points, Mr. Williams falls squarely within the population for whom Amendment 821 was designed to provide relief. Although the prior motion addressed whether this correction warranted a reduction in his term of imprisonment  a question the Court resolved in the negative  the underlying mathematical correction itself is not in dispute: Amendment 821 requires the reduction in criminal history points regardless of its effect on the guideline range.

B. This Motion Does Not Seek a Further Sentence Reduction.

Mr. Williams expressly acknowledges and accepts this Court's December 4, 2025 order denying his § 3582(c)(2) motion for a sentence reduction based on Amendment 821. He does not seek reconsideration of that ruling. His commuted sentence of 150 months remains in place, and this motion does not ask the Court to alter it in any respect.

The relief sought here is purely administrative in character: a judicial order confirming that, for BOP classification and PATTERN-scoring purposes, Mr. Williams's criminal history points are correctly calculated at 9 under the retroactive application of Amendment 821. This distinction is legally significant. A court order reducing a term of imprisonment under § 3582(c)(2) requires a finding that such a reduction is warranted under the factors set forth in 18 U.S.C. § 3553(a). A court order recognizing a corrected guideline calculation for administrative purposes does not carry the same threshold  it is a ministerial clarification that gives effect to a rule change the Sentencing Commission has already made retroactive.

C. The Corrected Calculation Has Materially Adverse Consequences for Mr. Williams Under the First Step Act.

The practical stakes of this correction are significant. Mr. Williams's PATTERN score is currently computed using the inflated 11-point criminal history figure, which places him in a higher risk tier than the corrected figure of 9 points would support. This artificially elevated risk classification has two direct and ongoing consequences:

1. Security placement. The BOP uses PATTERN risk scores in conjunction with other factors to assign custody levels and designate individuals to facilities of corresponding security levels. An inflated PATTERN score may result in Mr. Williams being housed at a higher-security facility than his actual risk profile warrants. FCI Berlin, where Mr. Williams is currently designated, is a medium-security facility. A corrected PATTERN score may render him eligible for a lower-security designation, which would meaningfully affect the conditions of his confinement.

2. Programming access and earned time credits. Under the First Step Act, individuals designated as lower risk are eligible for expanded access to evidence-based recidivism reduction programming and may earn additional time credits applicable toward pre-release custody or supervised release. 18 U.S.C. §§ 3632(d)(4), 3624(g). Mr. Williams has demonstrated a strong commitment to programming during his incarceration, including enrollment in the Non-Residential Drug Abuse Program, completion of the 7 Habits of Highly Effective People course, and completion of multiple ACE courses. An accurate PATTERN score would ensure that his eligibility for expanded programming and earned credits reflects his actual, lower risk level.

These are concrete, legally cognizable interests protected by the First Step Act. They are also interests that Congress specifically directed the BOP to honor through accurate risk assessment. An order from this Court formally establishing the corrected criminal history point total under Amendment 821 is the most efficient means of ensuring that the BOP fulfills this obligation with respect to Mr. Williams.

D. Career Offender Status Does Not Preclude the Amendment 821 Criminal History Correction.

This Court's prior ruling on the § 3582(c)(2) motion addressed the interplay between Mr. Williams's career offender designation under U.S.S.G. § 4B1.1 and his eligibility for a sentence reduction under Amendment 821. The Court's resolution of that question  whatever it was  does not bear on the present motion.

The career offender guideline elevated Mr. Williams's Criminal History Category to VI regardless of his underlying criminal history point total. It did not, however, alter the underlying point calculation itself. The Sentencing Commission has made clear that the Amendment 821 criminal history point reduction applies to the underlying calculation even where a defendant's criminal

3

## III. ARGUMENT

A. Under Amendment 821, Mr. Williams's Criminal History Points Are Properly Calculated at 9, Not 11.
At sentencing, Mr. Williams was assessed 11 criminal history points. Two of those points were added pursuant to U.S.S.G. § 4A1.1(d) (pre-amendment) because the instant offense was committed while Mr. Williams was under a criminal justice sentence the precise category of points that Amendment 821 eliminates.

Under the retroactively applicable Amendment 821, those two points must be subtracted. The corrected criminal history point total is therefore 9 points. With 9 criminal history points, Mr. Williams falls squarely within the population for whom Amendment 821 was designed to provide relief. Although the prior motion addressed whether this correction warranted a reduction in his term of imprisonment a question the Court resolved in the negative the underlying mathematical correction itself is not in dispute: Amendment 821 requires the reduction in criminal history points regardless of its effect on the guideline range.

B. This Motion Does Not Seek a Further Sentence Reduction.
Mr. Williams expressly acknowledges and accepts this Court's December 4, 2025 order denying his § 3582(c)(2) motion for a sentence reduction based on Amendment 821. He does not seek reconsideration of that ruling. His commuted sentence of 150 months remains in place, and this motion does not ask the Court to alter it in any respect.

The relief sought here is purely administrative in character: a judicial order confirming that, for BOP classification and PATTERN -scoring purposes, Mr. Williams's criminal history points are correctly calculated at 9 under the retroactive application of Amendment 821. This distinction is legally significant. A court order reducing a term of imprisonment under § 3582(c)(2) requires a finding that such a reduction is warranted under the factors set forth in 18 U.S.C. § 3553(a). A court order recognizing a corrected guideline calculation for administrative purposes does not carry the same threshold it is a ministerial clarification that gives effect to a rule change the Sentencing Commission has already made retroactive.

C. The Corrected Calculation Has Materially Adverse Consequences for Mr. Williams Under the First Step Act.
The practical stakes of this correction are significant. Mr. Williams's PATTERN score is currently computed using the inflated 11-point criminal history figure, which places him in a higher risk tier than the corrected figure of 9 points would support. This artificially elevated risk classification has two direct and ongoing consequences:

1. Security placement. The BOP uses PATTERN risk scores in conjunction with other factors to assign custody levels and designate individuals to facilities of corresponding security levels. An inflated PATTERN score may result in Mr. Williams being housed at a higher-security facility than his actual risk profile warrants. FCI Berlin, where Mr. Williams is currently designated, is a medium-security facility. A corrected PATTERN score may render him eligible for a lower-security designation, which would meaningfully affect the conditions of his confinement.
2. Programming access and earned time credits. Under the First Step Act, individuals designated as lower risk are eligible for expanded access to evidence-based recidivism reduction programming and may earn additional time credits applicable toward pre-release custody or supervised release. 18 U.S.C. §§ 3632(d)(4), 3624(g). Mr. Williams has demonstrated a strong commitment to programming during his incarceration, including enrollment in the Non-Residential Drug Abuse Program, completion of the 7 Habits of Highly Effective People course, and completion of multiple ACE courses. An accurate PATTERN score would ensure that his eligibility for expanded programming and earned credits reflects his actual, lower risk level. These are concrete, legally cognizable interests protected by the First Step Act. They are also interests that Congress specifically directed the BOP to honor through accurate risk assessment. An order from this Court formally establishing the corrected criminal history point total under Amendment 821 is the most efficient means of ensuring that the BOP fulfills this obligation with respect to Mr. Williams.

D. Career Offender Status Does Not Preclude the Amendment 821 Criminal History Correction.
This Court's prior ruling on the § 3582(c)(2) motion addressed the interplay between Mr. Williams's career offender designation under U.S.S.G. § 4B1.1 and his eligibility for a sentence reduction under Amendment 821. The Court's resolution of that question whatever it was does not bear on the present motion.

The career offender guideline elevated Mr. Williams's Criminal History Category to VI regardless of his underlying criminal history point total. It did not, however, alter the underlying point calculation itself. The Sentencing Commission has made clear that the Amendment 821 criminal history point reduction applies to the underlying calculation even where a defendant's criminal

4

history category was ultimately determined by the career offender guideline. See U.S.S.G. § 1B1.10, Application Note 1(A) (authorizing courts to apply retroactive amendments to calculate the corrected guideline range). The PATTERN algorithm used by the BOP incorporates the underlying criminal history point total not merely the category as a separate input. Accordingly, the correction of Mr. Williams's point total from 11 to 9 has independent significance for PATTERN scoring and security classification even if it does not alter his sentencing guideline range.

IV. RELIEF REQUESTED

For the foregoing reasons, Barry Williams respectfully requests that this Court enter an order:

3. Finding that, pursuant to Amendment 821, Part B, Subpart 1, retroactively applicable to Mr. Williams's case, the two status points previously assessed under U.S.S.G. § 4A1.1(d) are eliminated, reducing his criminal history point total from 11 to 9;
4. Directing the Bureau of Prisons to update Mr. Williams's official BOP records, PATTERN risk score computation, and security classification to reflect the corrected criminal history point total of 9, consistent with the retroactive application of Amendment 821 and the BOP's obligations under the First Step Act of 2018, 18 U.S.C. § 3632; and
5. Granting such other and further relief as the Court deems just and proper.

CONCLUSION

This motion asks only for what Amendment 821 requires: an accurate criminal history calculation. The Sentencing Commission made this amendment retroactive precisely because it recognized that the former status-points provision produced inflated criminal history scores that did not reflect a defendant's actual recidivism risk. That inflation two points continues to follow Mr. Williams into the BOP's classification system, affecting where he is housed and what programming he may access. A brief order from this Court correcting the record will remedy that ongoing inaccuracy and ensure that the First Step Act's risk-reduction framework operates as Congress intended.

Mr. Williams thanks the Court for its time and consideration.


Respectfully submitted,


/s/ Barry Williams
Barry Williams, Pro Se
BOP Reg. No. 57659-019
FCI Berlin
P.O. Box 9000
Berlin, NH 03570

Dated: _____


CERTIFICATE OF SERVICE

I, Barry Williams, hereby certify that on the date indicated below, I caused a true and correct copy of the foregoing Motion for Correction of Criminal History Calculation Pursuant to Amendment 821 to be served upon the United States Attorney's Office for the Southern District of New York by depositing the same in the United States mail, first-class postage prepaid, addressed as follows:


United States Attorney's Office
Southern District of New York
One Saint Andrew's Plaza
New York, New York 10007


/s/ Barry Williams



BARRY WILLIAMS #57659-019
FEDERAL CORRECTIONAL Facality
PO Box 9000
Berlin, New hampshire 03570

WHITE RIV JCT VT 050

3 APR 2026   PM 2  L

<>57659-019<>
Court Clerk
300 Quarropas ST
White Plains, NY 10601
United States

RECEIVED
APR 06 2026
W.P.

10601-414000

The Court has received Mr. Williams's request that it recalculate his criminal history points in light of Amendment 821 to the United States Sentencing Guidelines.  (Dkt. #430).  Mr. Williams emphasizes that he is not seeking a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2), but only a recalculation of his criminal history points so that the Bureau of Prisons ("BOP") may recalculate his score under its PATTERN ("Prisoner Assessment Tool Targeting Estimated Risk and Needs") risk assessment tool.

At his original sentencing, Mr. Williams was determined to have 11 criminal history points, including 2 "status points" for having committed the instant offense while under a criminal justice sentence.  (Dkt. #421 (Supplemental Presentence Investigation Report) at 2).  This number of points would normally result in a Criminal History Category of V; however, because Mr. Williams qualified as a career offender under U.S.S.G. § 4B1.1, his criminal history category was deemed to be VI.  In light of Amendment 821, were Mr. Williams sentenced today, he would only receive 1 status point, resulting in a total of 10 criminal history points.  *See* U.S. Sentencing Guidelines Manual app. C, amend. 821 (amending U.S.S.G. § 4A1.1(e) to provide, "Add 1 point if the defendant (1) receives 7 or more points under subsections (a) through (d), and (2) committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.").

The Court wondered whether any change to Mr. Williams's criminal history points would be academic, given the fact that the Criminal History Category would remain VI.  To that end, it consulted with the BOP Northeast Regional Counsel, who confirmed Mr. Williams's understanding that certain BOP tools rely on the number of criminal history points, rather than the Criminal History Category.

The remaining question is whether there is a procedural vehicle through which the change in criminal history points from 11 to 10 could be effectuated.  Put simply, the Court believes that it lacks the power to recalculate Mr. Williams's criminal history points.  Mr. Williams suggests that the Court has the "inherent authority to correct and clarify the application of the Sentencing Guidelines" to his case.  (Dkt. #430 at 2). However, as support, he cites 18 U.S.C. § 3582(c)(2) and *United States* v. *Borden*, 564 F.3d 100 (2d Cir. 2009), a case arising under that statute. Section 3582(c)(2), however, specifically addresses a defendant's term of imprisonment, which here remains unaffected by Amendment 821.  See 18 U.S.C. § 3582(c)(2) (allowing modification of a term of imprisonment where the original sentence was "based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o)").  And while Federal Rule of Criminal Procedure 36 allows a court "at any time [to] correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission," a subsequent Guidelines amendment does not fit within any of these categories.  Fed. R. Crim. P. 36.  The Court supposes that Mr. Williams could attempt to seek such relief pursuant to 28 U.S.C. § 2241, but such a motion would have to be made in the district of his confinement.  See *Jiminian* v. *Nash*, 245 F.3d 144, 146 (2d Cir. 2001) ("A motion pursuant to [Section] 2241 generally challenges the execution of a federal prisoner's sentence, including such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions.").

While the Court agrees with Mr. Williams that, post-Amendment 821, his criminal history points would be 10, the Court does not believe that it can grant the relief Mr. Williams seeks, and it therefore DENIES his motion. The Clerk of Court is directed to terminate the motion at docket entry 430, and to mail a copy of this endorsement to Mr. Williams at:

> Barry Williams
> Reg. No. 57659-019
> FCI Berlin
> P.O. Box 9000
> Berlin, NH  03570

Dated:    April 14, 2026        SO ORDERED.
          New York, New York

HON. KATHERINE POLK FAILLA
UNITED STATES DISTRICT JUDGE